IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

FILED
DEC 1 8 2001
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| JOHNNY M. GRUBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: CV-01-PT-2505-E |
| ) | |
| THE PRUDENTIAL INSURANCE ) | |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

ENTERED
DEC 1 8 2001

## MEMORANDUM OPINION

This cause comes to be heard on defendant The Prudential Insurance Company of America's ("Prudential") motion to dismiss filed on October 29, 2001. By order of this court dated October 30, 2001, the motion to dismiss was converted to a motion for summary judgment.

## FACTS

Plaintiff Johnny M. Grubbs ("Grubbs") is an individual over the age of nineteen years and a resident of Anniston, Calhoun County, Alabama.

Defendant Prudential is a corporation with its principal place of business outside of the State of Alabama.

Grubbs was employed by Morrison Knudsen as a Compliance Director-Quality Manager. Morrison Knudsen established a Long-Term Disability Benefits Plan ("Benefits Plan") to protect the income, in the event of total disability, of its eligible employees. Grubbs was insured under the Benefits Plan denoted as Group Policy Number 53853.

In January of 1996, Grubbs was diagnosed with severe coronary artery disease by Dr.

11

John Acker.[1] In a letter dated January 25, 1996, Dr. Acker stated that "from a cardiovascular standpoint," Grubbs should "refrain form work activities." Grubbs submitted disability claim notices to Morrison Knudsen's long term disability benefits provider and on February 27, 1996, was determined to be totally disabled from his usual occupation.[2] On or about April 15, 1996, Grubbs began receiving monthly long-term disability benefits of $3,300.02. Ultimately, the Social Security Administration determined Grubbs to be disabled pursuant to 20 C.F.R. § 404.1520(f) since January 15, 1996.

By letter dated December 4, 2000, Prudential informed Grubbs that his long-term disability claim had been transferred to its Plymouth Meeting office for future claim handling. Prudential requested that Grubbs complete a claim questionnaire and authorization for the release of medical information. After receiving Grubbs' claimant questionnaire on January 9, 2001, Prudential began contacting all of Grubbs' doctors requesting Grubbs' medical records and completion of various "Physical Capacity Evaluation" forms. In a letter dated May 16, 2001, Prudential notified Grubbs that its review of his medical and vocational documentation had led it to determine that Grubbs retained the capacity to perform a wide range of sedentary occupations. Consequently, Prudential decided that Grubbs no longer satisfied the policy definition of "total disability" and that his disability benefit payments would cease.

Pursuant to Prudential's instructions, Grubbs appealed their decision by filing a written appeal within sixty days of his receipt of the notice. In support of his appeal, Grubbs submitted

---

[1] Apparently, Grubbs had previously undergone heart bypass surgeries in 1987 and 1994.

[2] When Grubbs' application for benefits was approved, Aetna Health Plans was Morrison Knudsen's long term disability benefits provider. It is not clear how Prudential came into the picture. Apparently, it assumed Aetna's liability under the policy.

2

a letter from Dr. John Watkins, Grubbs' primary care physician, which stated that "he would find functioning in a work-related environment very difficult." Grubbs also submitted an affidavit from his cardiologist, Dr. Alfred W.H. Stanley, Jr., which stated in pertinent part: "While Mr. Grubbs is capable of some light physical activity and I previously reported that he is not totally disabled from a cardiac standpoint, it is an error to say he is medically capable of working." On or about September 6, 2001, Prudential refused to resume Grubbs' long-term disability benefits.

Grubbs filed this civil action against Prudential on October 4, 2001. In Count I, Grubbs alleges that Prudential acted in bad faith when it terminated Grubbs' disability benefits. In Count II, Grubbs alleges that Prudential breached its obligation pursuant to the contract of insurance by failing to maintain payment of the disability benefits. In Count III, Grubbs requests that this court enter a declaratory judgment that the coverage and benefits are due and payable and compel specific performance of the contract.

### ARGUMENTS

Prudential argues that summary judgment is appropriate as to all three counts of Grubbs' complaint because the claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). According to Prudential, an "employee benefit plan" is defined in ERISA as follows:

> (1) A plan, fund or program (2) established or maintained (3) by an employer . . . (4) for the purpose of providing . . . disability . . . benefits . . . (5) to participants or their beneficiaries.

*Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (en banc). Prudential argues that the plan in question is an "employee benefit plan" within the meaning of 29 U.S.C. § 1002 in that the plan was established by Grubbs' employer for the purpose of providing disability

insurance benefits to its employees.³ It contends that ERISA preempts all state laws which "relate to any employee benefit plan." 29 U.S.C. § 1144(a). Further, it asserts that all state law claims that "relate to" an employment benefit plan are preempted and a claim relates to the plan if it "has a connection with or reference to such a plan." *Shaw v. Delta Air Lines*, 463 U.S. 85, 97 (1983). Consequently, Prudential argues that Grubbs' state law breach of contract, bad faith, and declaratory judgment claims are preempted by ERISA. *Citing Swerhun v. The Guardian Life Ins. Co. of America*, 979 F.2d 195 (11th Cir. 1992) (affirming dismissal of state law breach of contract and bad faith claims on the ground that those claims are preempted by ERISA).

In response, Grubbs argues that the state law bad faith claim is not preempted by ERISA because it is a law regulating insurance and falls within the ERISA savings clause.⁴ Grubbs notes that the Alabama Supreme Court has recognized the tort of bad faith only in the context of cases involving insurance policies. *See American Cast Iron Pipe Co. v. Williams,* 591 So. 2d 854, 857 (Ala. 1991). Grubbs contends that this action is consistent with Alabama's passage of the Alabama Insurance Trade Practices Act and codification of its common law tort of bad faith. *See Ala. Code* § 27-12-24. According to Grubbs, Alabama's codification of the tort of bad faith in the "insurance" title of the Code of Alabama is significant because 29 U.S.C. § 1144(b)(2)(A) provides that "[n]othing in this sub-chapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance . . . ." To support this proposition, Grubbs

---

³ The Benefits Plan states that it is "intended to qualify as the Plan and Trust of a voluntary employee's beneficiary association within the meaning of Section 501(c)(9) of the Internal Revenue Code of 1954." The Benefits Plan further provides that it is to "be governed by and construed in accordance with the federal laws, including ERISA, governing employee benefit plans qualified under Section 501(c)(9) of the Internal Revenue Code of 1986. . . ."

⁴ In his opposition to Prudential's motion for summary judgment, Grubbs does not address whether the state law breach of contract and declaratory judgment claims in Counts I and III respectively, are preempted by ERISA.

4

cites this court to *Gilbert v. Alta Health & Life Insurance Co.*, 122 F. Supp. 1267 (N.D. Ala. 2000), *appeal docketed*, No. ___ - ___ (11th Cir. ____, ____); and *Hill v. Blue Cross Blue Shield of Alabama*, 117 F. Supp. 2d 1209 (N.D. Ala. 2000), *appeal dismissed*, No. 00-16128-JJ (11th Cir. Mar. 27, 2001) (holding that the Alabama tort of bad faith refusal to pay benefits under an insurance contract is a law that regulates insurance and thus in not preempted by ERISA because it falls within the ERISA savings clause).[5]

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed during the pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Id.* The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. *Id.* at 324. "When deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. *Barnes v. Southwest Forest Indus., Inc.*, 814 F.2d 607,

---

[5] Plaintiff Grubbs provides a detailed analysis of the methods of establishing the tort of bad faith refusal to pay insurance claims under Alabama law. For purposes of this motion, it is unnecessary to address that analysis at this time.

5

609 (11th Cir. 1987).

## CONCLUSIONS OF THE COURT

Under the present state of Eleventh Circuit law, this court feels bound to dismiss the state law claims. *See Belasco v. W.K.P. Wilson & Sons, Inc.*, 883 F.2d 277, 281 (11th Cir. 1987); *Amos v. Blue Cross-Blue Shield*, 868 F.2d 430-31 (11th Cir. 1989). It is not otherwise persuaded by the district court cases to the contrary.[6] The plaintiff will be given ten days to amend to state, without prejudice to his right to continue to maintain on appeal that he has the state law claims, an ERISA benefits claim. Further, the court will, on request of the plaintiff, within said ten days, stay proceedings in this case until such time as the *Gilbert* case is decided by the Eleventh Circuit.

This ___ day of December 2001.

/s/ Robert B. Propst
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**

---

[6] The following case have adhered to the previous Eleventh Circuit rulings notwithstanding the codification of bad faith law in Alabama. *See Salve v. Blue Cross and Blue Shield*, 161 F. Supp. 2d 1324 (S.D. Ala. 2001); *Ellis v. Canada Life Ins. Co.*, No. CV-01-N-1522-S, 2001 WL 1263660 (N.D. Ala. Oct. 16, 2001); *English v. Capital Risk Mg't, Inc.*, No. CIV. A. 01-D-659-S, 2001 WL 910412 (M.D. Ala. Aug. 8, 2001).